# POLICY CERTIFICATION COVER PAGE

---

THIS IS A CERTIFIED TRUE AND CORRECT
COPY OF THE ORIGINAL POLICY#

**AUTHORIZED SIGNATURE**

To not obstruct the information on the first page of the policy documents, this cover sheet has been inserted as a means to provide the certification stamp.

**FORMS SCHEDULE**

Policy Number: 01-340-41-74                    Effective  Date: May 14, 2020
Division No:   5                               Expiration Date: May 14, 2021
Insured Name:  BLUE CROSS AND BLUE SHIELD ASSOCIATION

Underwriter Name: KELSEY FRENCH               Print date: Jun 4, 2020
Underwriter Phone # : 312-930-5347            Printed by: SUGAN A/L MUNISAMY
                                              Phone # : +6 03 2719 632

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ RTQD01 |  | RISK TRANSFER |
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ COM001 | 91222 | POLICYHOLDER NOTICE |
| ☐ QD7359 | 101010 | SRP - DECLARATIONS - NONADMITTED (LEXINGTON) |
| ☐ QP9835 | 101014 | SRP GENERAL TERMS AND CONDITIONS - NONADMITTED (12/13) |
| ☐ QP9849 | 101025 | SPL COVERAGE SECTION (12/13) |
| ☐ QH7539 | 134869 | ABSOLUTE OPIOID EXCLUSION ENDORSEMENT |
| ☐ QH1128 | 135261 | CYBER CLAIMS EXCLUSION ENDORSEMENT SPL |
| ☐ MNSCPT | MNSCPT | SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT EXCLUSION ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | MODIFIED MISCELLANEOUS PROFESSIONAL SERVICES ENDORSEMENT (AMEND DEFINITION OF INSURED FOR SPECIFIC SERVICES) |
| ☐ MNSCPT | 136614 | MANAGED CARE SERVICES COVERAGE ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | CHOICE OF PANEL OR SCHEDULED COUNSEL ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | DEFENSE PROVISION AMENDED ENDORSEMENT (NON DUTY TO DEFEND SPECIFIC TO CLASS ACTION CLAIMS) |
| ☐ MNSCPT | MNSCPT | INSURED V INSURED EXCLUSION AMENDED ENDORSEMENT (EMPLOYEE CLAIMS) |
| ☐ MNSCPT | MNSCPT | CLAIM DEFINITION AMENDED ENDORSEMENT (ADMINISTRATIVE OR REGULATORY PROCEEDINGS) |
| ☐ MNSCPT | MNSCPT | FINES AND PENALTIES EXCLUSION AMENDED ENDORSEMENT |
| ☐ QH1256 | 136613 | SPECIFIC CLAIM TYPES CVG ENDTCLASS ACTION, PROVIDER SYSTEMICSEP SUBLIM, RETEN, COINSURANTITRUST CLMS EXCLUDED |
| ☐ QF1994 | 119679 | ECONOMIC SANCTIONS ENDORSEMENT |
| ☐ QG2099 | 125595 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| ☐ QE2392 | 78859 | FORMS INDEX ENDORSEMENT |

| Account Name: | *BLUE CROSS AND BLUE SHIELD ASSOCIATION* | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| Policy Number: | *01-340-41-74* | Policy Effective Date: | *May 14, 2020* |
| Underwriter: | *KELSEY FRENCH* | Print Date: | *Jun 4, 2020* |

| Initial Risk Transfer Assessment Date: | | *January 20, 2020* | |
|---|---|---|---|
| Risk Assessment Date | Risk Transfer Qualification | Risk Assessment Date | Risk Transfer Qualification |
| *05/14/2020* | *R1* | *05/14/2020* | *R1* |
| *05/14/2020* | *R1* | *05/27/2020* | *R1* |
| *05/27/2020* | *R1* | *05/27/2020* | *R1* |
| *05/28/2020* | *R1* | *05/28/2020* | *R1* |
| *05/28/2020* | *R1* | *05/28/2020* | *R1* |
| *06/01/2020* | *R1* | *06/01/2020* | *R1* |
| *06/01/2020* | *R1* | *06/01/2020* | *R1* |
| *06/01/2020* | *R1* | *06/01/2020* | *R1* |
| *06/04/2020* | *R1* | | |

**Risk Transfer Qualification Key:**

**R1** - Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary

**R2** - Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file

**R3** - Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file

**R4** - Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.

If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____                    _____

Underwriter                                                              Division President


_____

Chief Financial Officer

Surplus Lines License No:    *946200*    _____

**AIG**

| Sanctions Due Diligence Checklist for Commercial Insureds |
|---|

The AIG Property Casualty Economic Sanctions Standards require risk-based sanctions due diligence for commercial insureds. This assessment must be made prior to bind. These questions will assist you in completing due diligence pertaining to sanctions risk.

See the AIG PC Sanctions Web Page for guidance, including the following:
- RSAT contacts
- product line underwriting guidance
- de minimis application
- US sanctioned country program summary
(click here or type "sanctions" into the AIG Contact search box).

Insured: *BLUE CROSS AND BLUE*
*SHIELD ASSOCIATION*
_____
_____
_____
_____

Date: *May 14, 2020*

---

**During the course of your regular underwriting review, was there any evidence that would lead you to believe that the Commercial insured (including subsidiaries and branches) has sanctions exposure\* in any of the countries / regions listed below?**

    Cuba
    Iran
    Myanmar
    Sudan
    Syria
    North Korea
    Belarus
    Zimbabwe
    Crimea region of Ukraine

For the purpose of this question, "exposure" means any of the following:

- insured is incorporated, domiciled or located in any of the above listed countries
- insured conducts business activity involving Cuba, Crimea region of Ukraine, Iran, Syria or Sudan (e.g. services, shipments, sales, supply channels, covered property).
- information obtained shows that insured board members or officers are domiciled in Cuba, Crimea region of Ukraine, Iran, Syria or Sudan, or that an insured is majority owned by individuals or entities incorporated, domiciled or located in Cuba, Crimea region of Ukraine, Iran, Syria, Sudan. This information must be screened and evaluated.

**It is important to be alert to evidence of sanctions exposure during your regular underwriting review. Common underwriting sources that may contain information which would indicate a sanctions exposure are listed below:**

    Underwriting file/submission
    Company website
    Annual (or other) reports
    Discussion with customer/broker
    Schedules of covered property, routes, vessels, locations\*

**\*Note:** Endorsements, schedules, tax forms and other policy-related documents should not refer to sanctioned countries in a way that could suggest coverage, regardless of whether a sanctions exclusion is included in the policy.

*For AIG in Canada Underwriters please see the most current version of the local Economic Sanctions Guidelines issued by Compliance.*

YES ☐    NO ☐

All sanctions exposure must be escalated to the Regional Sanctions Assistance Team (RSAT)

US and Canada:
sanctions@aig.com

Asia Pacific:
sanctions.asiapacific@aig.com

Central:
sanctions.central@aig.com

Latin America:
sanctions.lacr@aig.com

Europe:
sanctions.europe@aig.com

Japan:
sanctions.fareast@aig.co.jp

**BRANCH COPY**

The material contained herein is proprietary to AIG and is intended for internal use only by employees of AIG. Unauthorized disclosure, dissemination, copying, or other use of this material without the express written permission of AIG is strictly prohibited.
Copyright © 2015 AIG. All rights reserved.

Acknowledgement By:          *KELSEY FRENCH*

Acknowledgement On:          *May 14, 2020*

Insured Name:                *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

Submission/Policy Number: *013404174*

**Risk Specialists Companies Insurance Agency, Inc.**
**d/b/a RSCIA in NH, UT & VT**
500 West Madison street
SUITE 3000
Chicago, IL 60661-4576
312-930-5300
**http://www.aig.com**



---

June 4, 2020

JESSICA FLANIGAN
LOCKTON COMPANIES LLC
500 W. MONROE STREET
SUITE 3400
CHICAGO, IL 60661

RE:   **BLUE CROSS AND BLUE SHIELD ASSOCIATION**

Policy Number:   **01-340-41-74**
Product:            SPECIALTY RISK PROTECTOR
Policy Period:    May 14, 2020 - May 14, 2021

Dear JESSICA

I am happy to deliver to you the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

KELSEY FRENCH
Underwriter
312-930-5347
 FinancialLines@aig.com

Enc.

1637119

**BRANCH COPY**

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)



**Lexington Insurance Company**

A capital stock company

**NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.**

# Specialty Risk Protector®

**POLICY NUMBER:** 01-340-41-74       **REPLACEMENT OF POLICY NUMBER:** 01-416-03-18

# DECLARATIONS

| NOTICES |
| --- |
| THIS POLICY CONTAINS ONE OR MORE COVERAGE SECTIONS. CERTAIN COVERAGE SECTIONS ARE LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER AS REQUIRED BY THE TERMS OF THE POLICY. DEFENSE COSTS SHALL REDUCE THE APPLICABLE LIMITS OF LIABILITY AND SUBLIMITS OF LIABILITY AND ARE SUBJECT TO APPLICABLE RETENTIONS. |
| PLEASE READ THIS POLICY CAREFULLY AND REVIEW IT WITH YOUR INSURANCE AGENT OR BROKER. |

**ITEMS**

| 1 | NAMED ENTITY | Named Entity | BLUE CROSS AND BLUE SHIELD ASSOCIATION |
| | | Mailing Address | 225 N MICHIGAN AVE FL 5 CHICAGO, IL 60601-7658 |

| 2 | POLICY PERIOD | Inception Date | May 14, 2020 | Expiration Date | May 14, 2021 |
| | | 12:01 A.M. at the address stated in Item 1 | | | |

| 3 | PREMIUM | $509,162 |

**4 NAME AND ADDRESS OF INSURER**

Lexington Insurance Company
99 High St, Floor 23
BOSTON, MA 02110-2378

**This Policy is issued only by the insurance company indicated in this Item 4.**

| 5 | LIMIT OF LIABILITY | $10,000,000 |

**6 COVERAGE SUMMARY**

| | COVERAGE SECTION | SUBLIMIT OF LIABILITY | RETENTION | RETROACTIVE DATE | CONTINUITY DATE |
| --- | --- | --- | --- | --- | --- |
| SPL | Specialty Professional Liability Insurance | $10,000,000 | $1,000,000 | Full Prior Acts | May 14, 2017 |

*1637119*

101010 (12/13) **BRANCH COPY**          1          © All rights reserved.

PRODUCER: *LOCKTON COMPANIES LLC*
ADDRESS: *500 W. MONROE STREET*
        *SUITE 3400*
        *CHICAGO, IL 60661*

**IN WITNESS WHEREOF**, the **Insurer** has caused this Policy to be signed by its President, Secretary and its duly Authorized Representative.


_____                 _____
PRESIDENT                                       SECRETARY


This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the **Insurer**.

_____
AUTHORIZED REPRESENTATIVE


_____   _____   _____
COUNTERSIGNATURE      DATE          COUNTERSIGNED AT


*1637119*

101010 (12/13) **BRANCH COPY**            2                    © All rights reserved.



**Specialty Risk Protector ®**

**GENERAL TERMS AND CONDITIONS
("GENERAL TERMS AND CONDITIONS")**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, the **Insurer** agrees as follows:

**1. TERMS AND CONDITIONS**

These **General Terms and Conditions** shall be applicable to all **Coverage Sections**. Terms appearing in bold in these **General Terms and Conditions** and not defined in Clause 2. **DEFINITIONS** of these **General Terms and Conditions** shall have the meaning provided for such terms in any applicable **Coverage Section** for purposes of coverage provided under such **Coverage Section**. The terms and conditions set forth in a **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

**2. DEFINITIONS**

(a) **"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other statements, information, representations of any **Insured** or documents submitted by any **Insured** in connection with the underwriting of this policy or the underwriting of any other policy providing the same or similar coverage issued by the **Insurer**, or any of its affiliates, of which this policy is in whole or part a renewal or replacement or which it succeeds in time.

With respect to publicly held companies, **Application** shall also include each and every public filing by or on behalf of any **Insured** made with the SEC including, but not limited to, any **Company's** Annual Report(s), 10-Ks, 10-Qs, 8-Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the period of time:

(i) beginning at the start of the twelve (12) month period immediately preceding the first submission to the **Insurer** in connection with the underwriting of this policy; and

(ii) ending at the inception of the **Policy Period**.

(b) **"Claims-Made and Reported Coverage Section"** means any **Coverage Section** designated as such.

(c) **"Company"** means the **Named Entity** and any **Subsidiary** thereof.

(d) **"Continuity Date"** means the date set forth in Item 6 of the Declarations with respect to each **Coverage Section**.

(e) **"Control Group"** means a **Company's** Chief Executive Officer, Chief Financial Officer, Chief Security Officer, Chief Technology Officer, Chief Information Officer, Risk Manager and

General Counsel (or equivalent positions, regardless of title).

(f) "**Coverage Section**" means each **Coverage Section** that is purchased by the **Named Entity** as indicated in Item 6 of the Declarations.

(g) "**Discovery Coverage Section**" means any **Coverage Section** designated as such.

(h) "**Discovery Period**" means any **Automatic Discovery Period** or **Optional Discovery Period**, as such terms are defined in Clause 9. of these **General Terms and Conditions**.

(i) "**Domestic Partner**" means any natural person legally recognized as a domestic or civil union partner under: (i) the provisions of any applicable federal, state or local law; or (ii) the provisions of any formal program established by a **Company**.

(j) "**First Party Coverage Section**" means any **Coverage Section** designated as such.

(k) "**First Party Event**" means the event(s) or circumstance(s) contained in the definition of **First Party Event** in a **First Party Coverage Section**.

(l) "**Insurer**" means the insurance company indicated in the Declarations.

(m) "**Limit of Liability**" means the amount stated in Item 5 of the Declarations.

(n) "**Management Control**" means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

(o) "**Named Entity**" means the entity listed in Item 1 of the Declarations.

(p) "**Occurrence Coverage Section**" means any **Coverage Section** designated as such.

(q) "**Policy Period**" means the period of time from the inception date stated in Item 2 of the Declarations to the earlier of the expiration date stated in Item 2 of the Declarations or the effective date of cancellation of this policy.

(r) "**Related Acts**" means all **First Party Events** and **Third Party Events** which are the same, related or continuous and all **First Party Events** and **Third Party Events** which arise from a common nucleus of facts. All **Related Acts** shall be considered to have occurred at the time the first such **Related Act** occurred.

(s) "**Retroactive Date**" means the date set forth in Item 6 of the Declarations as such for each **Coverage Section**.

(t) "**Sublimit of Liability**" means the applicable amount, if any, stated in Item 6 of the Declarations as such for each **Coverage Section**.

(u) "**Subsidiary**" means:

(1) any for-profit entity of which the **Named Entity** has or had **Management Control** ("**Controlled Entity**") on or before the inception date of the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**;

(2) any for-profit entity of which the **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly, whose gross revenues for the most recent fiscal year prior to the inception of this policy do not exceed ten percent (10%) of the aggregate gross revenues of the **Companies** for the most recent fiscal year prior to the inception date of this policy;

(3) any for-profit entity of which the **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly, whose gross revenues for the most recent fiscal year prior to the inception of this policy exceed ten percent (10%) of the aggregate gross revenues of the **Companies** for the most recent fiscal year prior to the inception date of this policy, but only once (a) the **Named Entity** shall have provided the **Insurer** with full particulars of such entity and agreed to any additional premium and amendments to this policy relating to such entity; and (b) the **Insurer** has ratified its acceptance of such entity as a **Subsidiary** by endorsement to this policy; and

(4) any not-for-profit entity sponsored exclusively by a **Company**.

Notwithstanding the foregoing, coverage afforded under this policy shall only apply to **Loss** arising out of **First Party Events** and **Third Party Events** occurring or allegedly occurring after the effective time that the **Named Entity** obtained **Management Control** of such **Subsidiary** and prior to the time that such **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

(v) "**Third Party Event**" means the event(s) or circumstance(s) contained in the definition of **Third Party Event** in a **Third Party Coverage Section**.

(w) "**Third Party Coverage Section**" means any **Coverage Section** designated as such.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claim** made against (i) the estates, heirs, or legal representatives of deceased natural person **Insureds**, and the legal representatives of natural person **Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Insureds** at the time the **Third Party Events** upon which such **Claims** are based occurred; or (ii) the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of a natural person **Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of a natural person **Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the natural person **Insured** and the spouse or **Domestic Partner**, or property transferred from the natural person **Insured** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Third Party Event** committed by or directly involving the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Third Party**

101014 (12/13)  ***BRANCH COPY*** Page 3 of 11  © All rights reserved.
GENERAL TERMS AND CONDITIONS

**Event** committed by or directly involving a natural person **Insured**, subject to the policy's terms, conditions and exclusions.

## 4. LIMIT OF LIABILITY

The **Limit of Liability** is the **Insurer's** maximum liability for all **Loss** under all **Coverage Sections** combined and the **Insurer** shall not be responsible to pay any **Loss** upon exhaustion of the **Limit of Liability**.

If a **Sublimit of Liability** is stated in Item 6 of the Declarations with respect to a **Coverage Section**, then such **Sublimit of Liability** shall be the **Insurer's** maximum liability for all **Loss** with respect to such **Coverage Section** and the **Insurer** shall not be responsible to pay any **Loss** under such **Coverage Section** upon exhaustion of such **Sublimit of Liability**. Each **Sublimit of Liability** shall be part of and not in addition to the **Limit of Liability** and shall in no way serve to increase the **Limit of Liability**.

The **Limit of Liability** and any applicable **Sublimits of Liability** for any **Discovery Period** shall be part of, and not in addition to, the **Limit of Liability** and the corresponding **Sublimits of Liability** for the **Policy Period**.

Solely with respect to any **Claims-Made and Reported Coverage Sections**, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** pursuant to Clauses 6(b) and 6(c) respectively, which is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the **Limit of Liability** and any applicable **Sublimit of Liability**.

## 5. RETENTION

The **Insurer** shall only be liable for the amount of **Loss** arising from each **Claim** or **First Party Event** that exceeds the Retention stated in Item 6 of the Declarations as applicable to the **Coverage Section** affording coverage to such **Claim** or **First Party Event**. Such Retention amounts must be borne by the **Insureds** and remain uninsured.

(a) For **Third Party Coverage Sections**

If a **Claim** triggers more than one **Third Party Coverage Section**, the highest applicable Retention amount shall apply to such **Claim**.

A single Retention amount shall apply to all **Claims** alleging **Related Acts**.

(b) For **First Party Coverage Sections**

If a **First Party Event** triggers more than one **First Party Coverage Section**, all applicable Retention amounts shall apply to such **First Party Event**.

A separate Retention amount shall apply to each respective **First Party Coverage Section** for **First Party Events** involving **Related Acts**.

(c) For **First Party Coverage Sections** and **Third Party Coverage Sections**

If a **First Party Event** or a **Third Party Event** and any **Related Acts** trigger coverage under one or

more **First Party Coverage Sections** and one or more **Third Party Coverage Sections,** all **First Party Coverage Section** Retentions shall apply pursuant to (b) above, in addition to the applicable **Third Party Coverage Section** Retention pursuant to (a) above.

## 6. NOTICE

(a) The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **First Party Event** as soon as practicable after:

   (1) any personnel in the office of any member of the **Control Group** first becomes aware of the **Claim**; or
   (2) any **First Party Event** commences or, solely with respect to a **Discovery Coverage Section**, is discovered.

   Notwithstanding the foregoing and regardless of whether any personnel described in (1) above has become aware, in all events each **Claim** under a **Claims-Made and Reported Coverage Section** must be reported no later than either:

   (1) forty-five (45) days after the end of the **Policy Period**; or
   (2) the end of any applicable **Discovery Period**.

(b) If written notice of a **Claim** or a **First Party Event** has been given to the **Insurer** pursuant to Clause (a) above, then:

   (1) any subsequent **Claim** made against an **Insured**; or
   (2) any subsequent **First Party Event**;

   arising out of, based upon or attributable to the facts giving rise to such **Claim** or **First Party Event** for which such notice has been given, or alleging any **Related Act** thereto, shall be considered made at the time such notice was given; and

(c) Solely with respect to any **Claims-Made and Reported Coverage Section**, if during the **Policy Period** or during the **Discovery Period** (if applicable), an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall choose to give written notice to the **Insurer** of such circumstances, the **Third Party Events**, allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Related Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

(d) Notice as described herein shall be given in writing to the **Insurer** at the following address or email address:

101014 (12/13)        ***BRANCH COPY***   Page 5 of 11        © All rights reserved.

**AIG Property Casualty**
**Financial Lines Claims**
**P.O. Box 25947**
**Shawnee Mission, KS  66225**
**c-claim@aig.com**

Any notice must reference the Policy Number set forth in the Declarations and the **Coverage Section(s)** under which an **Insured** is providing notice.

If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

## 7. INSURED'S OBLIGATIONS

In connection with all **Claims** and **First Party Events** under this policy, each **Insured** agrees to the following:

(a) such **Insured** shall send the **Insurer** copies of all demands, suit papers, other related legal documents and invoices for **Defense Costs** received by such **Insured**, as soon as practicable;

(b) such **Insured** shall immediately record the specifics of any **Claim** and **First Party Event** and the date such **Insured** first received such **Claim** or **First Party Event**;

(c) such **Insured** shall cooperate with and help the **Insurer** and/or any counsel appointed pursuant to the terms of this policy, including, without limitation, as follows:

(1) by not admitting liability;
(2) in making settlements;
(3) in enforcing any legal rights any **Insured** may have against anyone who may be liable to any **Insured**;
(4) by attending depositions, hearings and trials;
(5) by securing and giving evidence, and obtaining the attendance of witnesses;
(6) by furnishing any and all documentation within the possession of such **Insured** that may be required; and
(7) by taking such actions that such **Insured** and the **Insurer** agree are necessary and practicable to prevent or limit **Loss** arising from any **First Party Event** or **Third Party Event**.

(d) unless required to do so by law, **Insureds** shall not, without the **Insurer's** prior written consent:

(1) assume any financial obligation or incur any cost unless specifically allowed to settle any **Claim** on behalf of all **Insureds** within the retention pursuant to a **Coverage Section**.
(2) take any action, or fail to take any required action which prejudices the **Insurer's** rights under this policy.

## 8. CANCELLATION

(a) *By the* **Named Entity**:  This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer's** authorized agent or to the **Insurer**.

(b) *By the **Insurer***: This policy may be canceled by the **Insurer's** delivering to the **Named Entity** by registered, certified, other first class mail or other reasonable delivery method, at the address of the **Named Entity** set forth in Item 1 of the Declarations, written notice stating when, not less than sixty (60) days thereafter (ten (10) days in the event of cancellation for non-payment of premium), the cancellation shall be effective. Proof of mailing or delivery of such notice as aforesaid shall be sufficient proof of notice and this policy shall be deemed canceled as to all **Insureds** at the date and hour specified in such notice.

(c) *Return of Premium*: If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium hereon. If this policy shall be canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the premium hereon.

## 9. DISCOVERY

This Clause applies solely to **Claims-Made and Reported Coverage Sections** of this policy but shall not apply in the event of cancellation for non-payment of premium:

*(a) Automatic Discovery Period*: If the **Named Entity** or the **Insurer** shall cancel or refuse to renew this policy or in the event of a **Transaction** (as that term is defined in Clause 10. below), the **Named Entity** shall have the right following the effective date of such cancellation or nonrenewal to a period of sixty (60) days (the "**Automatic Discovery Period**") in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Automatic Discovery Period** for any **Third Party Events** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The **Automatic Discovery Period** shall not apply where an **Optional Discovery Period** has been purchased or to **Claims** that are covered under any subsequent insurance an **Insured** purchases or that is purchased for an **Insured's** benefit, or that would be covered by any subsequent insurance but for the exhaustion of the amount of insurance applicable to such **Claims** or any applicable Retention amount.

*(b) Optional Discovery Period*: Except as indicated below, if the **Named Entity** or the **Insurer** shall cancel or refuse to renew this policy or in the event of a **Transaction** (as that term is defined in Clause 10. below), the **Named Entity** shall have the right to a period of up to three years following the effective date of such cancellation or nonrenewal (an "**Optional Discovery Period**"), upon payment of an additional premium amount of up to:

(i)  one hundred percent (100%) of the full annual premium, for a period of one (1) year,
(ii) one hundred and seventy-five percent (175%) of the full annual premium, for a period of two (2) years, or
(iii) two hundred percent (200%) of the full annual premium, for a period of three (3) years,

in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Optional Discovery Period** for any **Third Party Events** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

If the **Named Entity** exercises its right to purchase an **Optional Discovery Period**, that period incepts at the end of the **Policy Period** and there shall be no **Automatic Discovery Period.**

As used herein, "full annual premium" means the premium amount set forth in the Declarations as such, plus an additional premium charged for any endorsements to this policy.

The right to purchase an **Optional Discovery Period** shall terminate unless written notice of election, together with any additional premium due, is received by the **Insurer** no later than thirty (30) days after the effective date of the cancellation, nonrenewal or **transaction**.

Any **Discovery Period** cannot be canceled and any additional premium charged for an **Optional Discovery Period** shall be fully earned at inception.

This Clause 9. **DISCOVERY** shall not apply to any cancellation resulting from non-payment of premium.

10. **TRANSACTIONS**

(a) If during the **Policy Period**:

(1) the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(either of the above events herein referred to as the "**Transaction**"), then this policy shall continue in full force and effect only as to those **First Party Events** and **Third Party Events** occurring prior to the effective time of the **Transaction**.

This policy may not be canceled after the effective time of the **Transaction**.

(b) Notwithstanding the foregoing, this policy may continue in full force and effect as to those **First Party Events** and **Third Party Events** occurring subsequent to the effective time of the **Transaction** if:

(1) within thirty (30) days of such **Transaction** the **Insurer** has been provided with full particulars of the **Transaction**, the related or acquiring person(s) or entity(ies) and any other information requested by the **Insurer**; and

(2) the **Insurer** waives the restrictions set forth in Paragraph 10(a) above with respect to such **Transaction** by written endorsement to this policy and the **Named Entity** or its successor has paid any additional premium and accepted any amendments to this policy required by the **Insurer**.

11. **SUBROGATION**

An **Insured** may be able to recover all or part of **Loss** from someone other than the **Insurer**. Such **Insured** must do all that is possible after a **First Party Event** or **Third Party Event** to preserve any, and all, rights of recovery. As a condition of any payment by the **Insurer** under this policy, an **Insured's** rights to recovery will be transferred to the **Insurer**. Each **Insured** will do whatever is necessary, including signing documents, to help the **Insurer** obtain that recovery.

A **Company** may waive an **Insured's** rights to recovery against others if such **Company** does so in writing and before the **First Party Event** or **Third Party Event** occurred.

12. **OTHER INSURANCE**

101014 (12/13)     ***BRANCH COPY***   Page 8 of 11          © All rights reserved.
GENERAL TERMS AND CONDITIONS

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Limit of Liability** or any applicable **Sublimit of Liability** provided by this policy.

### 13. NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Section 6 of these **General Terms and Conditions**, all notices required under this policy to be given by an **Insured** to the **Insurer** shall be given in writing to the **Insurer** at the address stated in Item 4(a) of the Declarations. It is agreed that the **Named Entity** shall act on behalf of all **Insureds** with respect to the giving of notice of a **Claim**, the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

### 14. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

### 15. DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, must first be submitted to the non-binding mediation process as set forth in this Clause.

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's ("**AAA**") then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

(a) either party shall have the right to commence a judicial proceeding; or

(b) either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows: (i) the implicated **Insureds** shall select one (1) arbitrator; (ii) the **Insurer** shall select one (1) arbitrator; and (iii) said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then-prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least 90 days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation.

The non-binding mediation may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding and/or the selection of mediators or arbitrators.

## 16. ACTION AGAINST INSURER

Except as provided in Clause 15 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of such **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against an **Insured** or a **Company** to determine an **Insured's** liability, nor shall the **Insurer** be impleaded by an **Insured** or a **Company** or their legal representatives.

## 17. BANKRUPTCY

Bankruptcy or insolvency of any **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 18. WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to **First Party Events** and **Third Party Events** occurring, **Claims** made or **Losses** suffered anywhere in the world.

## 19. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## 20. SERVICE OF SUIT

Subject to Clause 15, it is agreed that in the event of the **Insurer's** failure to pay any amount claimed to be due under this policy, the **Insurer**, at the request of any **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. Nothing in this Clause constitutes, or should be understood to constitute, a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States of America or of any state in the United States of America. It is further agreed that service of process may be made upon General Counsel, Legal Department, Lexington Insurance Company, 175 Water Street, NewYork, NY 10038 or his or her representative, and that in any suit instituted against the **Insurer** upon this contract, the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States of America which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as the **Insurer's** true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of any **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

[The balance of this page is intentionally left blank.]



**Specialty Risk Protector ®**

**Specialty Professional Liability Insurance
("SPL COVERAGE SECTION")**

THIS IS A CLAIMS MADE AND REPORTED COVERAGE SECTION AND A THIRD PARTY COVERAGE SECTION

Notice: Pursuant to Clause 1 of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of and are expressly applicable to this **SPL Coverage Section**, unless otherwise explicitly stated to the contrary in the **General Terms and Conditions** or in this **SPL Coverage Section**.

**1. INSURING AGREEMENTS**

With respect to the **ERRORS AND OMISSIONS INSURING AGREEMENT**, the **DEFENSE** provisions and the **SETTLEMENT** provisions of this Clause 1., solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, this **SPL Coverage Section** affords the following coverage:

**ERRORS AND OMISSIONS INSURING AGREEMENT**

The **Insurer** shall pay on an **Insured's** behalf all **Loss** in excess of the applicable Retention that such **Insured** is legally obligated to pay resulting from a **Claim** alleging a **Wrongful Act**.

**DEFENSE**

(a) The **Insurer** has the right and duty to defend a **Suit** for a **Wrongful Act**, even if the **Suit** is groundless, false or fraudulent.

(b) The **Insurer** has the right to investigate any **Claim**.

(c) The **Insurer's** duty to defend ends if an **Insured** refuses to consent to a settlement that the **Insurer** recommends pursuant to the **SETTLEMENT** provision below and that the claimant will accept. As a consequence of such **Insured's** refusal, the **Insurer's** liability shall not exceed the amount for which the **Insurer** could have settled such **Claim** had such **Insured** consented, plus **Defense Costs** incurred prior to the date of such refusal, plus 50% of **Defense Costs** incurred with the **Insurer's** prior written consent after the date of such refusal. This Clause shall not apply to any settlement where the total incurred **Loss** does not exceed the applicable Retention amount.

**SETTLEMENT**

(a) The **Insurer** has the right, with the written consent of an **Insured**, to settle any **Claim** if the **Insurer** believes that it is proper.

(b) An **Insured** may settle any **Claim** on behalf of all **Insureds** to which this insurance applies and

101025 (12/13)    ***BRANCH COPY***   Page 1 of 5    © All rights reserved.

which are subject to one Retention amount where the total incurred **Loss** does not exceed the Retention amount.

## 2. DEFINITIONS

(a) **"Bodily Injury"** means physical injury, sickness or disease, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) **"Claim"** means:

(1) a written demand for money, services, non-monetary relief or injunctive relief;
(2) a written request for mediation or arbitration, or to toll or waive an applicable statute of limitations; or
(3) a **Suit**.

(c) **"Defense Costs"** means all reasonable and necessary fees charged by an attorney appointed by the **Insurer** (unless otherwise provided for by this policy), as well as all other reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a **Claim** by the **Insurer** or by an **Insured** with the **Insurer's** written consent. **Defense Costs** shall not include: (i) compensation of any natural person **Insured**; or (ii) any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(d) **"Insured"** means:

(1)  a **Company**;
(2) any past, present or future officer, director, trustee, employee or leased worker of a **Company** acting in their capacity as such (and in the event a **Company** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof acting in their capacity as such); and
(3) any entity which a **Company** is required by contract to add as an **Insured** under this **SPL Coverage Section**, but only for the **Wrongful Acts** of a **Company**.

(e) **"Loss"** means compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages.

(f) *"Pollutants"* means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(g) **"Professional Services"** means those services described and set forth by endorsement to this **SPL Coverage Section**.

(h) **"Property Damage"** means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

101025 (12/13)　　***BRANCH COPY***　　Page 2 of 5　　© All rights reserved.

SPL COVERAGE SECTION

(i) **"Suit"** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding to which an **Insured** must submit or does submit with the **Insurer's** consent.

(j) **"Third Party Event"** means any **Wrongful Act**.

(k) **"Wrongful Act"** means any negligent act, error or omission, misstatement or misleading statement in an **Insured's** performance of **Professional Services** for others occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**.

3. **EXCLUSIONS**

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

(a) alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law; provided, however, the **Insurer** will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final, non-appealable judgment or adjudication against an **Insured** as to such conduct in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under this policy, at which time the **Insureds** shall reimburse the **Insurer** for **Defense Costs**.

(b) alleging, arising out of, based upon or attributable to any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**, (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**, or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

(d) alleging, arising out of, based upon or attributable to any **Bodily Injury** or **Property Damage**;

(e) alleging, arising out of, based upon or attributable to any:

(1) fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused;
(2) strikes or similar labor action, war, invasion, military action (whether war is declared or not), civil war, mutiny, popular or military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against any of these events;
(3) electrical or mechanical failures of infrastructure not under the control of an **Insured**, including any electrical power interruption, surge, brownout or blackout;
(4) failure of telephone lines, data transmission lines or other telecommunications or networking infrastructure not under the control of an **Insured**; or
(5) satellite failure.

(f) alleging, arising out of, based upon or attributable to any:
(1) purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

101025 (12/13)    *BRANCH COPY*   Page 3 of 5      © All rights reserved.

SPL COVERAGE SECTION

(2) violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

(3) violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law.

(g) alleging, arising out of, based upon or attributable to an **Insured's** employment of any individual or any of an **Insured's** employment practices (including, without limitation, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim).

(h) alleging, arising out of, based upon or attributable to antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including, without limitation, violations of any local, state or federal consumer protection laws.

(i) brought by or on behalf of:

(1) any **Insured**;

(2) any business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by an **Insured**; or

(3) any parent company, **Subsidiary**, successor or assignee of an **Insured**, or any person or entity affiliated with an **Insured** or such business entity through common **Management Control**.

provided, however, this exclusion shall not apply to an **Insured** as described in Sub-paragraph (d)(3) of the definition of **Insured**.

(j) for any of the following:

(1) the return of an **Insured's** fees or compensation;

(2) any profit or advantage to which an **Insured** is not legally entitled;

(3) an **Insured's** expenses or charges, including employee compensation and benefits, overhead, over-charges or cost over-runs;

(4) an **Insured's** cost of providing, correcting, re-performing or completing any **Professional Services**;

(5) the monetary value of any electronic fund transfer or transaction by an **Insured** or on an **Insured's** behalf, which is lost or diminished during transfer into, out of or between an **Insured's** accounts;

(6) civil or criminal fines or penalties imposed by law against an **Insured** and any matters deemed uninsurable under the law pursuant to which this policy shall be construed;

(7) an **Insured's** costs and expenses of complying with any injunctive or other form of equitable relief;

(8) taxes incurred by an **Insured**;

(9) the amounts for which an **Insured** is not financially liable or which are without legal recourse to any **Insured**;

(10) amounts an **Insured** agrees to pay pursuant to a contract, including without limitation, liquidated damages, setoffs or penalties.

(k) alleging, arising out of, based upon or attributable to any obligation an **Insured** has under contract; provided, however, this exclusion shall not apply to:

   (1) the obligation to perform **Professional Services**; or
   (2) liability an **Insured** would have in the absence of a contract, including without limitation, the obligation to conform **Professional Services** to any implied or statutory standards of care.

(l) alleging, arising out of, based upon or attributable to any **Wrongful Act**, or any **Related Acts** thereto, alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **SPL Coverage Section** is a renewal or replacement or which it may succeed in time.

(m) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Retroactive Date,** or any **Related Act** thereto, regardless of when such **Related Act** occurs.

(n) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Continuity Date,** or any **Related Act** thereto (regardless of when such **Related Act** occurs), if, as of the **Continuity Date**, an **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or would result in a **Claim** against such **Insured**.

(o) alleging, arising out of, based upon or attributable to any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein.

(p) alleging, arising out of, based upon or attributable to false advertising or misrepresentation in advertising.

(q) brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; provided, however, this exclusion shall not apply where the **Claim** is alleging a **Wrongful Act** in an **Insured's** performance of **Professional Services** for such entity.

(r) alleging, arising out of, based upon or attributable to:

   (1) false arrest, detention or imprisonment;
   (2) libel, slander or defamation of character;
   (3) wrongful entry or eviction;
   (4) malicious prosecution; or
   (5) invasion of any right of privacy.

(s) alleging, arising out of, based upon or attributable to an **Insured's** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance.

[The balance of this page is intentionally left blank.]

<u>**ENDORSEMENT#**</u> 1

This endorsement, effective *at 12:01AM May 14, 2020*                forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**ABSOLUTE OPIOID EXCLUSION ENDORSEMENT**

**This endorsement modifies each of the following Coverage Sections, if purchased:**

**Specialty Professional Liability**
**Publisher and Broadcaster**
**Media Content**
**ReputationGuard**
**Corporate Counsel Premier**

In consideration of the premium charged, it is hereby understood and agreed that:

1. Clause 3. **EXCLUSIONS** of each purchased **Coverage Section** listed above, other than the **ReputationGuard Coverage Section**, is amended by adding the following exclusion at the end thereof:

   (O-1) alleging, arising out of, based upon or attributable to any **Opioid Activity**:

2. Clause 3. **EXCLUSIONS** of the **ReputationGuard Coverage Section**, if purchased, is amended by adding the following exclusion at the end thereof:

   (O-1) **Opioid Activity**:

3. As used in this endorsement:

   "**Opioid**" means an "Opioid" as defined in 21 U.S.C. § 802(18) of the Controlled Substances Act. "**Opioid**" also means any substance, natural or synthetic, that binds to the body's opioid receptors. **Opioids** shall also include, but are not limited to, all opiates and opium derivatives identified as such in Schedules I through V of 21 U.S.C. § 812 of the Controlled Substances Act. For the avoidance of doubt, "**Opioids**" shall also include, but are not limited to, fentanyl, buprenorphine, oxycodone, oxymorphone, hydrocodone, hydromorphone, methadone, naloxone, codeine, morphine, tapentadol, tramadol, opium and heroin.

   "**Opioid Activity**" means:

©All rights reserved.
*END 001*

*BRANCH*

134869 (11/19)                1

**ENDORSEMENT#** 1     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

1. the developing, manufacturing, preparing, storing, packaging, handling, testing, distributing, diverting, transporting, promoting, advertising, marketing, prescribing, selling, furnishing, reporting, or disposing of **Opioids**;

2. any inadequate, incomplete or inaccurate evaluation, control, reporting or warning of, or failure to evaluate, control, report or warn of, the orders, use, misuse, overuse, abuse, addiction, dependency, or diversion of **Opioids**; or

3. any supervision, instruction, education, recommendation, guidelines, warnings, consultation, or advice given, or which should have been given, in connection with **Opioids**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 001*

*BRANCH*

<u>**ENDORSEMENT**</u># 2

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**CYBER CLAIMS EXCLUSION ENDORSEMENT**
**(SPL)**

**This endorsement amends the SPL Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that:

1.    Clause 3. **EXCLUSIONS** of the **SPL Coverage Section** is amended by adding the following additional exclusion to the end thereof:

   CC(a)  alleging, arising out of, based upon or attributable to any **Security Failure** or **Privacy Event**.

2.    Clause 2. **DEFINITIONS** of the **SPL Coverage Section** is amended by adding the following additional definitions to the end thereof:

   CC(a)  "**Computer System**" means any computer hardware, software or any components thereof that are linked together through a network of two or more devices accessible through the Internet, internal network or connected with data storage or other peripheral devices (including, without limitation, wireless and mobile devices), and are under ownership, operation or control of, or leased by, a **Company**.

      "**Computer System**" also means "cloud computing" and other hosted resources operated by a third party service provider for the purpose of providing hosted computer resources to a **Company** as provided in a written contract between such third party and a **Company**.

   CC(b)  "**Confidential Information**" means any of the following in a **Company's** or **Information Holder's** care, custody or control or for which a **Company** or **Information Holder** is legally responsible:

      (1)    information from which an individual may be uniquely and reliably identified or contacted, including, without limitation, an individual's

©All rights reserved.
*END 002*

*BRANCH*

135261 (01/20)                    1

**ENDORSEMENT#** 2    (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords;

(2)     information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations, or protected personal information under any similar federal, state, local or foreign law;

(3)     information concerning an individual that would be considered "protected health information" or "electronic protected health information" within the Health Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act), and their implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;

(4)     information used for authenticating customers for normal business transactions; or

(5)     any third party's trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports or other item of information that is not available to the general public.

CC(c)  **"Information Holder"** means a third party that:
(1)     a **Company** has provided **Confidential Information** to; or
(2)     has received **Confidential Information** on behalf of a **Company**.

CC(d)  **"Privacy Event"** means the following occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**:
(1)     any failure to protect **Confidential Information** (whether by "phishing," other social engineering technique or otherwise) including, without limitation, that which could result in an identity theft or other wrongful emulation of the identity of an individual or corporation;
(2)     any failure to disclose an event referenced in Sub-paragraph (1) above in violation of any **Security Breach Notice Law**;

©All rights reserved.
*END 002*

*BRANCH*

**ENDORSEMENT#** 2     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

     (3)    any unintentional failure of an **Insured** to comply with those parts of a **Company's** privacy policy that (a) prohibit or restrict the disclosure or sale of **Confidential Information** by an **Insured**, or (b) require an **Insured** to allow an individual to access or correct **Confidential Information** about such individual; or

     (4)    any violation of a federal, state, foreign or local privacy statute alleged in connection with a **Claim** for a failure described in Sub-paragraphs (1) or (2) above.

CC(e)    **"Security Breach Notice Law"** means any federal, state, local or foreign statute or regulation that requires an entity collecting or storing **Confidential Information**, or any entity that has provided **Confidential Information** to an **Information Holder**, to provide notice of any actual or potential unauthorized access by others to such **Confidential Information**, including but not limited to, the statute known as California SB 1386 (§1798.82, *et. seq.* of the California Civil Code).

CC(f)    **"Security Failure"** means the following occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**:

     (1)    a failure or violation of the security of a **Computer System** including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code;

     (2)    failure to disclose an event referenced in Sub-paragraph (1) above in violation of any **Security Breach Notice Law**.

     **"Security Failure"** includes any such failure or violation, resulting from the theft of a password or access code from an **Insured's** premises, the **Computer System**, or an officer, director or employee of a **Company** by non-electronic means.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 002*

*BRANCH*

135261 (01/20)                    3

<u>**ENDORSEMENT#**</u> 3

This endorsement, effective *at 12:01AM May 14, 2020* forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT EXCLUSION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the other exclusions of the policy, the **Insurer** shall not be liable to make any payment for **Loss** alleging, arising out of, or resulting, directly or indirectly, from:

    (a) any **Claim**, notice, event, damage, investigations or actions referred to in item 1. below (the "**Event**");

    (b) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) the **Event** or (b) any **Claim** arising from, in connection with or relating to the **Event**; or

    (c) any **Wrongful Act**, underlying facts, circumstances, acts, errors or omissions in any way relating to the **Event**.

1. **Event** shall mean**:**

   The Subscriber Track action filed by Galactic Funk Touring, Inc., et al. against Blue Cross Blue Shield of Alabama, et al. in the United States District Court for the Northern District of Alabama, Southern Division, on or about 12/07/2016 (Master File No. 2:13-CV-20000-RDP); and

   The Provider Track action filed by Jerry L. Conway, D.C., et al. against Blue Cross Blue Shield of Alabama, et al. in the United States District Court for the Northern District of Alabama, Southern Division, on or about 11/25/2014 (Master File No. 2:13-CV-20000-RDP).

2. It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** alleging, arising out of, based upon, attributable to or in any way related, directly or indirectly, in part or in whole, to any acts and/or **Third Party Events** which are **Related Acts** in relation to the **Event**, regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

    ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 003*

*BRANCH*

**ENDORSEMENT#** 4

This endorsement, effective *at 12:01AM May 14, 2020*                          forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**MODIFIED MISCELLANEOUS PROFESSIONAL SERVICES ENDORSEMENT (AMEND
DEFINITION OF INSURED FOR SPECIFIC SERVICES)**

In consideration of the premium charged, it is hereby understood and agreed that the **SPL
Coverage Section** is amended as follows:

1. In Clause 2. **DEFINITIONS**, paragraph (g) the definition of **"Professional Services"** is
   amended to include the following services:

   Professional services means those services performed, rendered or
   required to be performed or rendered by an Insured in the performance of
   or furtherance of BCBSA's Association business, including: (i) Structuring
   and implementing strategic partnerships and national contracts on behalf
   of the BCBS System; (ii) overseeing international licensing and
   development strategies; (iii) managing national brands including media and
   public relations and public issues activities, marketing and brand research;
   (iv) brand enforcement and defense activities; (v) monitoring license
   requirements and reports; (vi) coordinating BCBS Plan conferences and
   training programs and information sharing and a networking activities; and
   (vii) support to BCBS System committees, subcommittees, workgroups or
   other bodies.

2. Solely with respect to the coverage afforded under this endorsement, in Clause 2.
   **DEFINITIONS** of the **SPL Coverage Section**, subparagraph (d)(2) of the definition of
   **"Insured"** is deleted in its entirety and replaced with the following:

   (2) each of the **Company's** past or present directors, trustees, officers, medical
   directors, committee persons, volunteers, interns, employees, or any other
   individual duly authorized to perform a service covered under the **ERRORS AND
   OMISSIONS INSURING AGREEMENT** on behalf of the **Company**, but only while
   acting in such capacity.

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 004*

*BRANCH*

MNSCPT (05/20)                    1

<u>ENDORSEMENT#</u> 5

This endorsement, effective *at 12:01AM May 14, 2020*         forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

## MANAGED CARE SERVICES COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

> **Specialty Risk Protector**®
> **General Terms and Conditions**
> **SPL Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that, solely for the purposes of the coverage afforded by this endorsement, the policy is amended as follows:

1. In the **SPL Coverage Section**, the first paragraph of Clause 1. **INSURING AGREEMENTS** is deleted in its entirety and replaced with the following:

   With respect to the **ERRORS AND OMISSIONS INSURING AGREEMENT**, the **DEFENSE** provisions and the **SETTLEMENT** provisions of this Clause 1., solely with respect to **Claims** first made against an **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within ninety (90) days following the termination of the **Policy Period**, this **SPL Coverage Section** affords the following coverage:

2. In the **SPL Coverage Section**, Clause 2. **DEFINITIONS**, subparagraph (d)(2) of the definition of "**Insured**" is deleted in its entirety and replaced with the following:

   (2)     each of the **Company's** past or present directors, trustees, officers, medical directors, committee persons, volunteers, interns, employees, or any other individual duly authorized to perform a service covered under the **ERRORS AND OMISSIONS INSURING AGREEMENT** on behalf of the **Company**, but only while acting in such capacity.

3. In the **SPL Coverage Section**, Clause 2. **DEFINITIONS**, paragraph (g), the definition of "**Professional Services**," is amended to include the following services:

   **Managed Care Services**

4. In the **SPL Coverage Section**, Clause 2. **DEFINITIONS**, paragraph (k), the definition of "**Wrongful Act**," is deleted in its entirety and replaced with the following:

   (k)  "**Wrongful Act**" means any negligent act, error or omission, misstatement or misleading statement in the performance of **Professional Services** for others occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**, but only to the extent such **Professional Services** were:

©All rights reserved.
### *END 005*

*BRANCH*

**ENDORSEMENT#** 5     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                         forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

      (1) performed by an **Insured**; or

      (2) performed by any other person or entity contracted by the **Company** to perform **Professional Services** for or on behalf of a **Company**, and for whom a **Company** is vicariously liable.

5. In the **SPL Coverage Section**, Clause 2. **DEFINITIONS** is further amended by adding the following paragraphs to the end thereof:

MC(a) **"Antitrust Activity"** means any actual or alleged price fixing, price discrimination, predatory pricing, monopolization, restraint of trade, unfair competition, unfair or deceptive trade practice, or violation of any federal or state antitrust law;

MC(b) **"Managed Care Services"** means:
(1) any health care or managed care financial, management or insurance service the **Company** performs in its business; and
(2) the design, development and marketing of any such service.

MC(c) **"Medical Services"** means any medical, surgical, mental health, dental, nursing or chiropractic examination, treatment or therapy, the furnishing or dispensing of blood, drugs or medical, surgical, dental, or chiropractic supplies or appliances, or the handling of, or performing post-mortem examination on, a human body.

6. In the **SPL Coverage Section**, Clause 3. **EXCLUSIONS**, paragraphs (d), (h) and (o) are deleted in their entirety.

7. In the **SPL Coverage Section**, Clause 3. **EXCLUSIONS**, paragraph (j) is amended by adding the following to the end thereof:

Provided, however that with respect to subparagraphs (1), (2), (4), (6), (7), (8) and (10) above, the **Insurer** shall defend **Suits** that allege any of the foregoing conduct, and are not otherwise excluded.

8. In the **SPL Coverage Section**, Clause 3. **EXCLUSIONS** is amended by adding the following to the end thereof:

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

©All rights reserved.
*END 005*

*BRANCH*

**ENDORSEMENT#** 5    (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                  forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

MC(a) alleging, arising out of, based upon or attributable to any act, error or omission in the conduct of any partnership or joint venture; provided, however, this exclusion shall not apply to any entity listed in the Declarations.

MC(b) alleging, arising out of, based upon or attributable to any act, error or omission in the performance of **Medical Services**; provided, however, that this exclusion will not apply to: (1) any **Claim** alleging that, under statute, rule, regulation or common law, the performance of any **Managed Care Services** by an **Insured** constitutes the rendering of **Medical Services**; or (2) alleged liability for an act, error, or omission by a person or entity other than an **Insured** in the performance of, or failure to perform, **Medical Services**; (3) the voluntary performance of an emergency **Medical Service** by an **Insured** without the receipt or expectation of remuneration; or (4) health promotion activities or education, including wellness counseling and participation in health fairs.

MC(c) alleging, arising out of, based upon or attributable to the unauthorized use of, unauthorized access to or destruction of any computer data, software, hardware, system, or network, or any denial of service attack or receipt or transmission of a malicious code.

MC(d) alleging, arising out of, based upon or attributable to **Antitrust Activity**.

9. Solely with respect to the coverage afforded under this endorsement, in Clause 9. **DISCOVERY** of the **General Terms and Conditions**, Subsection (a) **Automatic Discovery Period** is deleted in its entirety and replaced with the following:

(a) **Automatic Discovery Period:** If the **Named Entity** or the **Insurer** shall cancel or refuse to renew this policy or in the event of a **Transaction** (as that term is defined in Clause 10. below), the **Named Entity** shall have the right following the effective date of such cancellation or nonrenewal to a period of ninety (90) days (the "**Automatic Discovery Period**") in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Automatic Discovery Period** for any **Third Party Events** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. **The Automatic Discovery Period** shall not apply where an **Optional Discovery Period** has been purchased or to **Claims** that are covered under any subsequent insurance an **Insured** purchases or that is purchased for an **Insured's** benefit, or that would be covered by any subsequent insurance but for

©All rights reserved.
**END 005**

*BRANCH*

**ENDORSEMENT#** 5    (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

the exhaustion of the amount of insurance applicable to such **Claims** or any applicable Retention amount.

10. With respect to any **Claim** alleging a **Wrongful Act** arising out of **Managed Care Services**, as defined in this endorsement, the applicable **Retroactive Date** shall be Full Prior Acts and not any date set forth in Item 6. of the Declarations.

11. With respect to any **Claim** alleging a **Wrongful Act** arising out of **Managed Care Services**, as defined in this endorsement, the maximum liability of the **Insurer** for all **Loss** arising out of all such **Claims** is $10,000,000 (the "**Managed Care Services Sublimit of Liability**"). The maximum liability of the **Insurer** for all **Loss** arising out of any one **Claim** shall be $10,000,000 (the "**Managed Care Services Per Claim Sublimit of Liability**"). The **Managed Care Services Sublimit of Liability** and the **Managed Care Services Per Claim Sublimit of Liability** shall be part of, and not in addition to, the **Limit of Liability**, the **Sublimit of Liability** for the **SPL Coverage Section** and any other applicable **Sublimit of Liability**.

12. With respect to any **Claim** alleging a **Wrongful Act** arising out of **Managed Care Services** as defined in this endorsement, the applicable Retention amount shall be $1,000,000 and not any amount set forth in Item 6. of the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 005*

*BRANCH*

136614 (05/20)                    4

<u>**ENDORSEMENT#**</u> 6

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

### CHOICE OF PANEL OR SCHEDULED COUNSEL ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

A.    With regard to any **Claim** (other than **Class Action Claims**) for which an **Insured** seeks coverage, the initial choice of counsel for specific jurisdictions **("Chosen Counsel")** shall be made by such **Insured** from:

(i)    the **Insurer's** list of panel firms, which list is available upon request by an **Insured**; or
(ii)   the list of firms in the Schedule below at the maximum hourly rates set forth in the Schedule for each listed firm;

provided, however, that any and all fees, costs, charges and billings of **Chosen Counsel** shall be paid and satisfied on an ongoing basis by the **Insureds** until all applicable Retention amounts have been satisfied.

B.    With regard to any **Claim** (other than **Class Action Claims**) for which an **Insured** seeks coverage, such **Insured** agrees that, as a condition precedent to coverage for **Defense Costs** incurred through **Chosen Counsel** in excess of the applicable Retention amount, such **Insured** and **Chosen Counsel** must comply with the **Insurer's** Litigation Management Guidelines (the **"Guidelines"**), which are attached to the policy as an addendum hereto and are a part of this policy. The responsibility for ensuring that the **Guidelines** are adhered to rests with the **Insureds** and not the **Insurer** or **Chosen Counsel**. The **Insureds** understand and agree that the **Guidelines** contain reasonable and necessary reporting and billing procedures to be followed by **Chosen Counsel**, including, without limitation:

1.    development of a litigation plan and litigation budget;
2.    acceptable rates for services;
3.    pre-approval by the **Insurer** before designated legal services are provided; and
4.    the required format for submitting **Defense Costs** to the **Insurer**.

The **Guidelines** also require that **Chosen Counsel** work closely and communicate regularly with the **Insurer's** assigned claims

©All rights reserved.
### *END 006*

*BRANCH*

**ENDORSEMENT#** 6    (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                                  forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

      professional in coordinating defense efforts and that **Chosen Counsel** apprise the **Insurer** on a regular and timely basis as to significant case developments.

C.    In the event **Insured(s)** cannot select legal counsel from the Insurer's list of panel firms or from the list of **Chosen Counsel** in the Schedule below due to: (1) no firm is available in the jurisdiction in which such **Claim** (other than **Class Action Claims**) is brought; (2) an actual conflict of interest; or (3) other circumstances in which the use of other counsel is both reasonable and necessary, the **Insurer** and the **Insured(s)** shall jointly agree upon such counsel who will defend the **Insured(s)** in such matter. If the **Insurer** and the **Insured** are unable to agree upon selection of defense counsel, the **Insurer** shall select defense counsel.

D.    Fees, costs, charges, billings and any other expense incurred through any law firm or other service provider, other than **Chosen Counsel** or a firm chosen pursuant to paragraph C above, shall not be recoverable under this policy as **Defense Costs** or otherwise.

E.    For purposes of this endorsement, "Class Action Claim" means any **Claim** that is:

    (a)    brought on behalf of a class or putative class of plaintiffs (whether or not certified as such);
    (b)    otherwise brought on a representative basis; or
    (c)    alleging or arising from the same **Third Party Event** or a series of continuous, repeated or related **Third Party Events** as any **Claim** described in the preceding subparagraphs (1) or (2).

**SCHEDULE OF CHOSEN COUNSEL**

Kirkland & Ellis
Rate Caps per hour for Partner/Associate/Paralegal: $600/$500/$170

DLA Piper
Rate Caps per hour for Partner/Associate/Paralegal: $600/$500/$170

Pugh Jones
Rate Caps per hour for Partner/Associate: $395/$275

©All rights reserved.
*END 006*

*BRANCH*

**ENDORSEMENT#** 6     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
***END 006***

*BRANCH*

MNSCPT (05/20)                    3

<u>ENDORSEMENT# 7</u>

This endorsement, effective *at 12:01AM May 14, 2020*           forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**DEFENSE PROVISION AMENDED ENDORSEMENT (NON DUTY TO DEFEND SPECIFIC TO CLASS ACTION CLAIMS)**

In consideration of the premium charged it is hereby understood and agreed that, solely with respect to **Class Action Claims**, in Clause 1. INSURING AGREEMENTS of the **SPL Coverage Section**, the **DEFENSE** and **SETTLEMENT** provisions are deleted in their entirety and replaced with the following:

**DEFENSE AND SETTLEMENT**

(a) The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** alleging a **Wrongful Act**.

(b) The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **Defense Costs** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld; provided, however, an **Insured** may settle any **Claim** on behalf of all **Insureds** to which this insurance applies and which are subject to one Retention amount where the total incurred **Loss** does not exceed the Retention amount.

(c) With respect to all **Claims**, the **Insureds** shall have the right to select their own legal defense counsel, subject to the approval of the **Insurer**, such approval not to be unreasonably withheld.

(d) The **Insurer** shall advance **Defense Costs** of any **Suit** alleging a **Wrongful Act** that have been consented to by the **Insurer**, excess of the applicable Retention amount and subject to the **Limit of Liability** and any applicable **Sublimit of Liability**, no later than ninety (90) days after the **Insurer** received invoices for such **Defense Costs**. Such advance payments shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall be finally adjudicated to not be entitled under this policy to payment of **Loss** in connection with such **Suit**.

(e) Only those settlements, stipulated judgments and **Defense**

©All rights reserved.

*END 007*

*BRANCH*

**ENDORSEMENT# 7**     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                     forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

> **Costs** which the **Insurer** has consented to shall be recoverable as **Loss** under this policy, which consent shall not be unreasonably withheld. Provided, however, it shall be a condition precedent to any payment of **Loss** under this policy that the **Insurer** shall have had a reasonable opportunity to effectively associate in the investigation, defense, the prosecution and the negotiation of any settlement of any **Claim** or **Suit** that appears reasonably likely to exceed the Retention, and that each **Insured** has given the **Insurer** full cooperation and such information as the **Insurer** may reasonably require in connection with the investigation, defense, prosecution and negotiation of any such settlement.

For purposes of this endorsement, **"Class Action Claim"** means any **Claim** that is:

    (a)   brought on behalf of a class or putative class of plaintiffs (whether or not certified as such);

    (b)   otherwise brought on a representative basis; or

    (c)   alleging or arising from the same **Third Party Event** or a series of continuous, repeated or related **Third Party Events** as any **Claim** described in the preceding subparagraphs (1) or (2).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 007*

*BRANCH*

<u>**ENDORSEMENT#** 8</u>

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**INSURED V INSURED EXCLUSION AMENDED ENDORSEMENT (EMPLOYEE CLAIMS)**

In consideration of the premium charged, it is hereby understood and agreed that in Clause 3.
**EXCLUSIONS** of the **SPL Coverage Section**, paragraph (i) is amended to include the following at the end thereof:

> Provided further, however, this exclusion shall not apply to any **Claim** brought by any employee of a **Company** alleging a **Wrongful Act** in the performance of **Professional Services** for such employee, and such **Claim**: (i) does not relate to such employee's employment by a **Company**; (ii) is not brought by such employee in his or her capacity as an employee; and (iii) such employee did not contribute to or participate in the **Wrongful Act(s)** alleged in the **Claim.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

_____
**AUTHORIZED REPRESENTATIVE**

©All rights reserved.
*END 008*

*BRANCH*

**ENDORSEMENT# 9**

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

### CLAIM DEFINITION AMENDED ENDORSEMENT (ADMINISTRATIVE OR REGULATORY PROCEEDINGS)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 2. **DEFINITIONS** of the **SPL Coverage Section**, paragraph (b) **"Claim"** is amended by appending the following to the end thereof:

**Claim** also means any administrative or regulatory proceedings brought against an Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

©All rights reserved.
***END 009***

*BRANCH*

MNSCPT (05/20)                    1

<u>**ENDORSEMENT#** 10</u>

This endorsement, effective *at 12:01AM May 14, 2020*   **forms a part of**
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

### FINES AND PENALTIES EXCLUSION AMENDED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause 3.
**EXCLUSIONS** of the **SPL Coverage Section**, paragraph (j) is amended by adding the following to the end thereof:

Provided, however that with respect to subparagraphs (1), (2), (4), (6), (7), (8) and (10) above, the **Insurer** shall defend **Suits** that allege any of the foregoing conduct, and are not otherwise excluded.

  ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

_____
**AUTHORIZED REPRESENTATIVE**

©All rights reserved.
*END 010*

*BRANCH*

<u>**ENDORSEMENT#**</u> 11

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

**SPECIFIC CLAIM TYPES COVERAGE ENDORSEMENT**
**(CLASS ACTION, PROVIDER & SYSTEMIC CLAIMS)**
**(SEPARATE SUBLIMITS, RETENTION, COINSURANCE)**
**(ANTITRUST CLAIMS EXCLUDED)**

**This endorsement amends the General Terms and Conditions.**

In consideration of the premium charged, it is hereby understood and agreed that:

1.    In Clause 5. **RETENTION** of the **General Terms and Conditions**, section (a) "For **Third Party Coverage Sections**" is amended by adding the following to the end thereof:

      Notwithstanding the foregoing, and solely with respect to **Class Action Claims**, the Retention shall be $7,500,000 and not any amount set forth in Item 6 of the Declarations.

      Notwithstanding the foregoing, and solely with respect to **Provider Claims**, the Retention shall be $2,500,000 and not any amount set forth in Item 6 of the Declarations.

      Notwithstanding the foregoing, and solely with respect to **Systemic Claims**, the Retention shall be $7,500,000 and not any amount set forth in Item 6 of the Declarations.

2.    The **General Terms and Conditions** is further amended by adding the following Clauses to the end thereof:

      **SC-1. COINSURANCE (For Systemic Claims)**

            With respect to any **Loss** in connection with a **Systemic Claim**, a coinsurance percentage of forty percent 40% shall apply.  The coinsurance percentage of any covered **Loss** shall be borne by the **Insureds** and remain

©All rights reserved.
*END 011*

*BRANCH*

136613 (05/20)                    1

**ENDORSEMENT# 11**     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                    forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

uninsured. Payments of any coinsurance percentage by an **Insured** shall not reduce the **Limit of Liability** or the **Sublimit of Liability** for any applicable **Coverage Section.**

**SC-2. TIE-IN OF CLAIMS SUBLIMIT**

With respect to **Claims** covered under both this policy and under the **Other AIG Policy** (**"Other Claims"**), the combined limit of liability under both policies for such **Other Claims** shall be $10,000,000 (the **"Other Claims Sublimit"**). The payment of **Loss** that is subject to the corresponding sublimit for such **Other Claims** of the **Other AIG Policy** shall reduce the **Other Claims Sublimit** of this policy.

Nothing in this Clause shall be construed to increase the **Limit of Liability** of this policy, which shall remain the maximum liability of the **Insurer** for all **Loss** in the aggregate under this policy.

3.      Solely with respect to the coverage afforded by this endorsement, Clause 2. **DEFINITIONS** of the **General Terms and Conditions** is amended by adding the following definitions to the end thereof:

SC(a)   **"Antitrust Activity"** means any actual or alleged price fixing, price discrimination, predatory pricing, monopolization, restraint of trade, unfair competition, unfair or deceptive trade practice, or violation of any federal or state antitrust law;

SC(b)   **"Antitrust Claim"** means any **Claim** arising out of, based upon or attributable to **Antitrust Activity.**

SC(c)   **"Class Action Claim"** means any **Claim:**

1. brought on behalf of a class or putative class of plaintiffs (whether or not certified as such);
2. otherwise brought on a representative basis; or

©All rights reserved.
*END 011*

*BRANCH*

**ENDORSEMENT# 11**     (Continued)

This endorsement, effective *at 12:01AM May 14, 2020*                         forms a part of
Policy number: *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

      3.  alleging or arising from the same **Third Party Event** or a series of continuous, repeated or related **Third Party Events** as any **Claim** described in the preceding subparagraphs 1. or 2.

SC(d)  **"Provider Claim"** means any **Claim** brought by, or on behalf of, any individual or entity providing health care services to individuals through one or more of the **Named Entity's** member plans.

SC(e)  **"Systemic Claim"** means any **Claim** brought against: (i) the **Named Entity** and (ii) five (5) or more of the **Named Entity's** member plans.

4.    It is further understood and agreed that for any **Systemic Claim** that also qualifies as a **Provider Claim** and/or a **Class Action Claim**, such **Claim** shall be treated as a **Systemic Claim** with respect to the Retention and Coinsurance applicable to **Systemic Claims** as set forth in this Endorsement.

5.    It is further understood and agreed that this policy shall not cover **Loss** in connection with any **Antitrust Claim** made against an **Insured**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

 

_____
**AUTHORIZED REPRESENTATIVE**

©All rights reserved.
*END 011*

*BRANCH*

ENDORSEMENT# *12*

This endorsement, effective at *12:01 am   May 14, 2020*           forms a part of
Policy number *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

Product Name: *SPECIALTY RISK PROTECTOR*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

**END 012**

119679 (9/15)           **BRANCH COPY** Page 1 of 1

<u>ENDORSEMENT#</u> *13*

This endorsement, effective at *12:01 am   May 14, 2020*          forms a part of
Policy number *01-340-41-74*
Issued to: *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

By: *Lexington Insurance Company*

Product Name:   *SPECIALTY RISK PROTECTOR*

## FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.   However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.   Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 013*

**ENDORSEMENT#** *14*

This endorsement, effective *12:01 am    May 14, 2020*                 forms a part of
policy number *01-340-41-74*
issued to *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

by    *Lexington Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 101010 | 12/13 | SRP - DECLARATIONS - NONADMITTED (LEXINGTON) |
| 101014 | 12/13 | SRP GENERAL TERMS AND CONDITIONS - NONADMITTED (12/13) |
| 101025 | 12/13 | SPL COVERAGE SECTION (12/13) |
| 134869 | 11/19 | ABSOLUTE OPIOID EXCLUSION ENDORSEMENT |
| 135261 | 01/20 | CYBER CLAIMS EXCLUSION ENDORSEMENT SPL |
| MNSCPT | 06/20 | SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT EXCLUSION ENDORSEMENT |
| MNSCPT | 05/20 | MODIFIED MISCELLANEOUS PROFESSIONAL SERVICES ENDORSEMENT (AMEND DEFINITION OF INSURED FOR SPECIFIC SERVICES) |
| 136614 | 05/20 | MANAGED CARE SERVICES COVERAGE ENDORSEMENT |
| MNSCPT | 05/20 | CHOICE OF PANEL OR SCHEDULED COUNSEL ENDORSEMENT |
| MNSCPT | 05/20 | DEFENSE PROVISION AMENDED ENDORSEMENT (NON DUTY TO DEFEND SPECIFIC TO CLASS ACTION CLAIMS) |
| MNSCPT | 05/20 | INSURED V INSURED EXCLUSION AMENDED ENDORSEMENT (EMPLOYEE CLAIMS) |
| MNSCPT | 05/20 | CLAIM DEFINITION AMENDED ENDORSEMENT (ADMINISTRATIVE OR REGULATORY PROCEEDINGS) |
| MNSCPT | 05/20 | FINES AND PENALTIES EXCLUSION AMENDED ENDORSEMENT |
| 136613 | 05/20 | SPECIFIC CLAIM TYPES CVG ENDTCLASS ACTION, PROVIDER SYSTEMICSEP SUBLIM, RETEN, COINSURANTITRUST CLMS EXCLUDED |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 125595 | 03/17 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

© All rights reserved.
*END 014*

78859 (10/01)    *BRANCH COPY*        Page 1 of 2

**ENDORSEMENT#** *14*

This endorsement, effective *12:01 am     May 14, 2020*                forms a part of
policy number   *01-340-41-74*
issued to *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

by    *Lexington Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
                              AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 014*

78859 (10/01)   *BRANCH COPY*          Page 2 of 2

**FORMS SCHEDULE**

Policy Number: 01-340-41-74
Division No:     5
Insured Name:  BLUE CROSS AND BLUE SHIELD ASSOCIATION

Effective  Date: May 14, 2020
Expiration Date: May 28, 2021

Underwriter Name: KELSEY FRENCH
Underwriter Phone # : 312-930-5347

Print date: May 26, 2021
Printed by: Kristine Anne Reyes
Phone # : 632 863 5800

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ QE7599 101651 | | ITEM 2 AMENDATORY ENDORSEMENT (ADDITIONAL PREMIUM) |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

NUSFRM

**Risk Specialists Companies Insurance Agency, Inc.**
**d/b/a RSCIA in NH, UT & VT**
500 West Madison Street
SUITE 3000
Chicago, IL 60661- 4576
312- 930- 5300
http://www.aig.com



May 26, 2021

JESSICA FLANIGAN
LOCKTON COMPANIES LLC
500 W. MONROE STREET
SUITE 3400
CHICAGO, IL 60661

RE:  BLUE CROSS AND BLUE SHIELD ASSOCIATION

Policy Number:   01- 340- 41- 74
Product:         SPECIALTY RISK PROTECTOR
Policy Period:   May 14, 2020 - May 28, 2021

Dear JESSICA

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

KELSEY FRENCH
Underwriter
312- 930- 5347
 FinancialLines@aig.com

Enc.

1637119

***BRANCH COPY***

**ENDORSEMENT#** *15*

This endorsement, effective *12:01 am    May 14, 2021*              forms a part of
policy number    *01-340-41-74*
issued to *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

by    *Lexington Insurance Company*

### ITEM 2 AMENDATORY ENDORSEMENT

**This endorsement amends the Declarations of the policy.**

In consideration of the additional premium of *$19,348*               , it is hereby understood
and agreed that Item 2 of the Declarations "POLICY PERIOD," is deleted in its entirety and
replaced with the following:

| 2 | POLICY PERIOD | Inception Date | *May 14, 2020* | Expiration Date | *May 28, 2021* |
|---|---|---|---|---|---|
| | | 12:01 A.M. at the address stated in Item 1 | | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 015***

101651 (6/09)    *BRANCH COPY*          Page 1 of 1

ENDORSEMENT# *16*

This endorsement, effective *12:01 am    May 14, 2021*                 forms a part of
policy number   *01-340-41-74*
issued to *BLUE CROSS AND BLUE SHIELD ASSOCIATION*

by    *Lexington Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| 101651 | 06/09 | ITEM 2 AMENDATORY ENDORSEMENT (ADDITIONAL PREMIUM) |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 016*

(1/05)        *BRANCH COPY*         Page 1 of 1